UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RUIE E. HARRIS,

        Plaintiff,

    v.                               **Civil Action 2:20-cv-4356**
                                          **Judge Edmund A. Sargus, Jr.**
                                          **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Ruie E. Harris ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Period of Disability, Disability Insurance, and Supplemental Security Income Benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 18), the Commissioner's Memorandum in Opposition (ECF No. 19), and the administrative record (ECF No. 13). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.      BACKGROUND

Plaintiff filed prior applications for Title II Period of Disability and Disability Income Benefits and Title XVI Supplemental Security Income Benefits on October 10, 2013, alleging that she had been disabled since April 30, 2012. (R. 89.) On November 19, 2015, following administrative denials of Plaintiff's applications initially and on reconsideration, Administrative Law Judge William J. Mackowiak issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. 89–97.)

Plaintiff filed her present applications for Title II Period of Disability and Disability Income Benefits and Title XVI Supplemental Security Income Benefits on October 28, 2017, alleging, after amendment, that she became disabled effective November 20, 2015. (R. 17, 227–33.) On August 12, 2019, following administrative denials of Plaintiff's applications initially and on reconsideration, a hearing was held before Administrative Law Judge Deborah Sanders (the "ALJ"). (*Id.* 46–85.) Plaintiff, represented by counsel, appeared and testified. Vocational expert George Coleman (the "VE") also appeared and testified at the hearing. On October 1, 2019, the ALJ issued a decision denying benefits. (*Id.* at 17–39.) On June 24, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors (ECF No. 19), Plaintiff asserts two contentions of error: (1) the ALJ failed to properly evaluate the new and material evidence Plaintiff submitted after the prior unfavorable decision and improperly adopted the prior ALJ's residual functional capacity ("RFC")[1] determination; and (2) the ALJ failed to properly evaluate the opinions of Shelly Brown, CNP, Plaintiff's treating nurse practitioner. (*Id.* at 7–17.)

## II.     THE ALJ'S DECISION

On October 1, 2019, the ALJ issued a decision finding again that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17–39.) At step one of the

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial

gainful activity since her alleged disability onset date of November 20, 2015. (*Id.* at 21.) At step

two, the ALJ found that Plaintiff has the severe impairments of schizoaffective disorder

depressive type, and posttraumatic stress disorder. (*Id.*) She further found at step three that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(*Id.* at 22.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform a full range of work at all
> exertional levels but with the following non-exertional limitations: never work at
> unprotected heights, around dangerous machinery, or operate a motor vehicle; work
> is limited to simple, routine, and repetitive tasks in a work environment free of fast
> paced production requirements with no production quotas involving only simple
> work related decisions with few, if any, workplace changes; only occasional
> interaction with coworkers, but no tandem or shared tasks; only occasional
> interaction with supervisors; no interaction with the general public in a customer
> service capacity.

(*Id.* at 25.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the
   criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20
   C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his
   or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual
   functional capacity, can the claimant perform other work available in the national
   economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step five of the sequential process, the ALJ found that Plaintiff was capable of performing past relevant work as a cleaner.  (*Id.* at 36.)  The ALJ further found in the alternative, relying on the VE's testimony, that there are other jobs existing in the national economy that Plaintiff is also able to perform.  (*Id.* at 37–38.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (*Id.* at 38.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the

4

SSA fails to  follow its own regulations and where that error prejudices a claimant on the merits

or deprives  the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742,

746 (6th Cir.  2007).

## IV.    ANALYSIS

As set forth above, Plaintiff asserts two contentions of error: (1) the ALJ failed to

properly evaluate the new and material evidence Plaintiff submitted after the prior unfavorable

decision and improperly adopted the prior ALJ's RFC; and (2) the ALJ failed to properly

evaluate the opinions of Shelly Brown, CNP, Plaintiff's treating nurse practitioner.  The

undersigned considers each contention of error in turn.

**A.    The ALJ gave Plaintiff's new and material evidence the "fresh look" required by
    *Earley*.**

In *Drummond v. Commissioner of Social Security*, the United States Court of Appeals for

the Sixth Circuit held that principles of *res judicata* apply to both claimants and the

Commissioner in Social Security cases.  126 F.3d at 841–42.  The *Drummond* court specifically

held that absent evidence of "changed circumstances" relating to a claimant's condition, "a

subsequent ALJ is bound by the findings of a previous ALJ."  *Id.* at 842.  Following *Drummond*,

the Social Security Administration issued AR 98-4(6), which provides, in pertinent part, as

follows:

> [W]hen adjudicating a subsequent disability claim with an unadjudicated period
> arising under the same title of the Act as the prior claim, adjudicators must adopt
> such a finding from the final decision by an ALJ or the Appeals Council on the
> prior claim in determining whether the claimant is disabled with respect to the
> unadjudicated period unless there is new and material evidence relating to such a
> finding or there has been a change in the law, regulations or rulings affecting the
> finding or the method for arriving at the finding.

AR 98–4(6), 1998 WL 283902, at *3 (June 1, 1998).

The Sixth Circuit clarified its *Drummond* decision in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). In *Earley*, the ALJ found that *Drummond* required him to give preclusive effect to a prior RFC determination absent "new and material evidence documenting a significant change in the claimant's condition." *Id.* at 930 (record citation omitted). The Sixth Circuit disagreed with the ALJ's approach, noting that *Drummond* was a somewhat unusual case in which the claimant was seeking to hold the Commissioner to a prior finding that she was limited to "sedentary" work, as opposed to the finding by a second ALJ that she could engage in "medium" work. *Id.* at 934. Indeed, in *Drummond*, the claimant was entitled to the benefit of *res judicata* as to the Commissioner's previous finding because "[n]othing had changed between the end of the first application and the beginning of the second one—other than the advancement of one year in the applicant's age." *Id.* at 932 (citing *Drummond*, 126 F.3d at 842). Under those circumstances, in which the first and second ALJs reviewed essentially the same medical evidence,[3] the *Earley* court affirmed *Drummond*'s holding that the Commissioner was bound by the previous ALJ's finding that the plaintiff was limited to sedentary work. *Id.* at 932–33.

It is much more common, however, for claimants to receive an unfavorable decision and then file a second application for a subsequent period, this time desiring that the Commissioner reach a different result. *Earley* held that "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." *Id.* at 932. The Sixth Circuit explained that "the key principles protected by *Drummond*—

---

[3] The only additional evidence considered by the second ALJ was a report indicating that the plaintiff's "condition actually worsened" in the interim. *Drummond*, 126 F.3d at 843.

consistency between proceedings and finality with respect to resolved applications"—do not

prohibit the Social Security Administration "from giving a fresh look to a new application

containing new evidence or satisfying a new regulatory threshold that covers a new period of

alleged disability while being mindful of past rulings and the record in prior proceedings." *Id*. at

931. Thus, "[w]hen an individual seeks disability benefits for a distinct period of time, each

application is entitled to review." *Id.* at 933 (citations omitted). Nonetheless, "[f]resh review is

not blind review," and "[a] later administrative law judge may consider what an earlier judge did

if for no other reason than to strive for consistent decision making." *Id*. at 934. Indeed, "it is fair

for an administrative law judge to take the view that, absent new and additional evidence, the

first administrative law judge's findings are a legitimate, albeit not binding, consideration in

reviewing a second application." *Id.* at 933.

Courts applying the "fresh look" test must do so with consideration for the underlying

principle animating *Earley*: fairness to the applicant. *See Ferrell v. Berryhill*, No. 1:16-CV-

00050, 2019 WL 2077501, at *5 (E.D. Tenn. May 10, 2019) (explaining that "the point" of

*Earley* is fairness to the applicant). Accordingly, "an applicant should have the opportunity for a

full hearing, with no presumptions applied, when the claim covers a new period of time not

addressed in the prior hearing." *Id.* As a result, "if an ALJ is under the mistaken assumption that

she is bound by the earlier ALJ's decision, the applicant is faced with 'an unwarranted

procedural burden . . . at the second hearing.'" *Maynard v. Comm'r of Soc. Sec.*, No. 2:18-CV-

959, 2019 WL 3334327, at *6 (S.D. Ohio July 25, 2019), *report and recommendation adopted*,

2019 WL 3891859 (S.D. Ohio Aug. 16, 2019) (quoting *Ferrell*, 2019 WL 2077501, at *6).

In this case, Plaintiff submitted new evidence regarding her impairments during the

almost-four-year period subsequent to ALJ Mackowiak's 2015 decision. She submitted

treatment records from New Horizons Mental Health Services, where she received mental health treatment from 2014 through 2019, primarily from Shelly Brown, CNP.  (R. 324–671, 767–1084.)  She also submitted several evaluations and opinions: a November 29, 2017 Mental Status Questionnaire by Shelly Brown, CNP (R. 325–27); a May 31, 2019 mental Medical Source Statement by Eric Kahn, M.D. (R. 754–66); and a June 14, 2017 Neurobehavioral Status Examination by Jeffrey Daniel Madden, Ph.D. (R. 1085–90).  These additional medical records satisfy the "new evidence" standard required for a "fresh look" under *Earley*.  893 F.3d at 931.  The Court must therefore ask whether ALJ Sanders, "despite purporting to follow *Drummond*, gave the evidence a fresh look" as required by *Earley*.  *See Johnson v. Comm'r of Soc. Sec.*, No. 2:17-CV-13126, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018) (collecting cases).  "If so, then the ALJ's decision satisfie[s] *Earley*; if not, then remand [i]s appropriate."  *See id*.

Here, ALJ Sanders extensively discussed the many mental status examinations documented in the New Horizons treatment notes as well as each of the medical source opinions.  The ALJ noted that, on examination during the relevant period, Plaintiff was oriented; her fund of knowledge was often, though not always, intact; general information was impaired at times; her memory was typically intact, except for rare occasions; she rarely exhibited paranoia; her behavior was appropriate, pleasant, cooperative, and unagitated; her speech and language skills were intact; her psychomotor activity was intact; her though process was intact; her thought content was often normal; she sometimes reported auditory hallucinations, but often reported none; she sometimes had delusions, but no psychosis; her attention and concentration were at times impaired, at other times normal; her appearance was normal; she was casually dressed; she was often labile, depressed, anxious, constricted, blunted, or flat, though at times her mood and

affect were appropriate; and her insight and judgment were typically intact. (*See* ALJ Decision, R. 32–33, citing in detail New Horizons treatment notes.)

The ALJ also discussed the opinions of Jeffrey Madden, Eric Kahn, and Shelly Brown. (R. 29–30, 33–35.) The ALJ noted that Dr. Madden performed cognitive testing, but Plaintiff's "results were unrealistically poor and invalid," and that Dr. Madden concluded that Plaintiff's current medication regimen was the most obvious potential cause of the significant psychological symptoms and cognitive issues. (R. 29, citing R. 1088.) The ALJ then provided a detailed discussion of Dr. Khan's opinion, discounting it largely because the form used was "deceptive." (R. 35.) That is, the form defined the various categories of limitations—mild, moderate, marked, and extreme—in ways that do not correspond with Social Security regulations and policies. (*Id.*) The ALJ also noted that Dr. Khan had only recently begun treating Plaintiff at the time the opinion was rendered and his opinions were ultimately unsupported by the mental status examinations in the record. (*Id.*) The ALJ also discounted Ms. Brown's opinion because it was unsupported by and inconsistent with the mental status examinations in the record, and because her limitations were vague, conclusory, and extreme. (R. 33–34.)[4]

Finally, the ALJ also considered Plaintiff's testimony at the August 12, 2019 hearing. The ALJ noted that Plaintiff testified that she still heard voices, but less frequently than she did at the time of the prior decision; Plaintiff reported her anxiety in crowds had not changed since the prior decision; Plaintiff claimed to have flashbacks; Plaintiff testified she did not require assistance to care for her fiancé, who is a double amputee learning to walk with prosthetics; Plaintiff reported she could not concentrate long enough to read books or magazines, and had no hobbies and never went out to dinner; Plaintiff testified that she could drive but went to the store

---

[4] The ALJ's consideration of Ms. Brown's opinion is discussed in further detail below.

with her son due to her crowd anxiety; Plaintiff reported being able to pay bills and write checks; and Plaintiff testified to poor sleep duration.  (R. 26–27.)

In arriving at the RFC, ALJ Sanders cited *Drummond* and AR 98-4 and concluded:

The record does contain new evidence reflecting the claimant's treatment since the prior decision.  However as discussed in more detail below, this new evidence is not material as the record does not show significant improvement or worsening in her symptoms since the prior decision.  There is therefore not new and material evidence to provide a basis for a different finding of the claimant's residual functional capacity.  However, the undersigned has updated the residual functional capacity to be policy compliant with Social Security regulations, such as removing non-vocational terms such as "hazards" and "superficial" and inputting more specific language to define those terms.

(R. 20.)  Thus, ALJ Sanders arrived at an RFC that was nearly, but not completely, identical to that arrived at by ALJ Mackowiak.  The only differences are that ALJ Sanders (a) changed ALJ Mackowiak's restriction of "avoid concentrated exposure to hazards" to "never work at unprotected heights, around dangerous machinery, or operate a motor vehicle"; (b) added a restriction of "no production quotas"; and (c) changed "only brief and superficial interaction with public" to "no interaction with the general public in a customer service capacity."  (*Compare* R. 92 *with* R. 25.)  In sum, ALJ Sanders's RFC is more restrictive than that of ALJ Mackowiak, because it prohibits production quotas and interaction with the general public.

The undersigned concludes that ALJ Sanders complied with the core principles set forth in *Earley*, as she gave "a fresh look" to Plaintiff's new application "while being mindful of past rulings and the record in the prior proceedings."  *See* 893 F.3d at 931.  ALJ Sanders did not merely adopt ALJ Mackowiak's RFC without analysis; to the contrary, ALJ Sanders carefully considered and discussed in detail the treatment notes, opinion evidence, and Plaintiff's testimony from the period subsequent to the prior decision.  Moreover, ALJ Sanders included additional restrictions that were not present in ALJ Mackowiak's RFC, demonstrating that ALJ Sanders did not incorrectly believe herself to be bound by the prior RFC.  The undersigned

therefore finds no error in the ALJ's application of *Drummond*.  *See, e.g., Lambert v. Comm'r of Soc. Sec.*, No. 1:18-CV-116, 2019 WL 336903, at *5 (S.D. Ohio Jan. 28, 2019) ("Because ALJ Nguyen gave a "fresh look" to the new evidence, a remand under *Earley* is not warranted, and the undersigned must conduct a substantial evidence review of ALJ Nguyen's decision."); *Earley*, 893 F.3d at 933 ("[I]t is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application."); *Washington v. Comm'r of Soc. Sec.*, No. 1:17-CV-773, 2019 WL 1367736, at *5 (S.D. Ohio Mar. 26, 2019) (declining remand where the ALJ reviewing the second application "did not merely rely upon the earlier denial," but "undertook an evaluation of the objective medical evidence presented and claimant's allegations of limitation").

**B.     The ALJ did not err in considering the opinions of Shelly Brown, CNP.**

Plaintiff next argues that the ALJ "improperly evaluated the questionnaire completed by Ms. Brown[, Plaintiff's treating nurse practitioner]," which "result[ed] in an inaccurate residual functional capacity."  (Pl.'s Statement of Errors 12, ECF No. 18.)  Specifically, Plaintiff contends that the ALJ's discussion of the supportability and consistency of Ms. Brown's opinion was lacking.  (*Id.* at 14–16.)  The undersigned disagrees.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1) (2012).  A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file.  *Id.*  The governing regulations[5] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other

---

[5]  Plaintiff's application was filed after March 27, 2017.  Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). When evaluating medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ."
§§ 404.1520c(b)(3); 416.920c(b)(3).

Shelly Brown, CNP, completed a Mental Status Questionnaire on November 29, 2017. (R. 325–27.) The ALJ provided the following discussion of Ms. Brown's opinions, finding them unpersuasive:

> The undersigned has considered the opinion of nurse Shelly Brown. In November 2017, she completed a form indicating the claimant could not manage her benefits. In response to a question asking her to please describe the claimant's ability to remember, understand, and follow directions, Ms. Brown responded with "no—shows limited ability to remember, understand, or follow directions". With maintaining attention, she responded "no—cannot maintain attention". She

indicated the claimant "cannot sustain concentration complete tasks". She indicated the claimant isolated herself from others and could not adapt easily due to critical thinking problems. She indicated the claimant was unable to react well to work pressures. (Exhibit B1F, pages 3-4).

Nurse Brown did have a long treatment relationship with the claimant on which to base her opinion. However, this degree of limitation is not consistent with the mental status examinations in the record. Additionally, her opinions are fairly vague and conclusory. For instance, she indicated the claimant had limited ability to remember, understand, or follow directions, but did not explain to what degree those limitations were. Other limitations she gave were extreme. For instance, her indication that the claimant "cannot sustain concentration complete tasks" would imply the claimant is completely incapable of performing any task at all. Such extreme limitations is not supported by the record and is contrary to the claimant's activities of daily living and her ability to drive. While the record did support concentration deficits, she was certainly not incapable of completing any task. For these reasons, this opinion is not persuasive.

(R. 33–34.) The undersigned finds no error with the ALJ's consideration of Ms. Brown's opinions. The ALJ appropriately explained that Ms. Brown's opinions that Plaintiff could not maintain attention or concentration at all was neither supported by nor consistent with the record. The ALJ's decision to not include Ms. Brown's extreme cognitive limitations in Plaintiff's RFC was therefore supported by substantial evidence.

First, as to supportability: the ALJ clearly states that Ms. Brown's opinions are not supported by the record. In this case, the record consists primarily of treatment notes New Horizons by Ms. Brown herself, which the ALJ discussed in detail elsewhere in the record. (*See* R. 22–25, 32–33.) Namely, mental status examinations by Ms. Brown reflected that Plaintiff's thought process was intact; her attention and concentration were sometimes normal and at other times impaired; and that at times she was easily distracted. (*Id.* at 24, 32.) These findings do not support Ms. Brown's extreme limitations. Nor does Ms. Brown support her opined limitations in the Mental Status Questionnaire itself; she has merely written short, conclusory phrases in answer to the form's questions, despite also being asked to "include a brief example to support your clinical conclusion in each area." (R. 325.) *See Pettigrew v. Berryhill*, No. 1:17-cv-1118,

2018 WL 3104229, *13 (N.D. Ohio June 4, 2018) ("Numerous decisions have found that the use

of checklist or check-the-box forms that contain little to no accompanying explanation for the

assessed limitations—even when utilized by a treating physician or acceptable medical source—

are unsupported opinions . . . ."  (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630

(6th Cir. 2016) ("Dr. Chapman's checklist opinion did not provide an explanation for his

findings; therefore, the ALJ properly discounted it on those grounds."); *Smith v. Astrue*, 359 F.

App'x 313, 316 (3d Cir. 2009) ("[C]hecklist forms . . . which require only that the completing

physician check a box or fill in a blank, rather than provide a substantive basis for the

conclusions stated, are considered weak evidence at best in the context of a disability analysis.")

(internal quotation marks and citation omitted).  Thus, although the ALJ may not have used the

term "supportability," the ALJ's discussion satisfied the requirements of §§ 404.1520c and

416.920c as to the supportability of Ms. Brown's opined limitations.

Similarly, the ALJ provided adequate discussion of the consistency between Ms. Brown's

opined limitations and the mental status examinations of record.  Contrary to Plaintiff's

contention that the ALJ did not provide a record citation for this statement, the ALJ extensively

detailed the mental status examinations elsewhere in the decision.  (R. 22–25, 32–33.)  *See Hill*

*v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's

decision should be read as a whole).  The ALJ also pointed out that Plaintiff was able to

complete activities of daily living and had the ability to drive.  (R. 34.)  Therefore, the ALJ

appropriately found that, although the mental status examinations documented some impairments

of concentration and attention, nothing in the record suggested that Plaintiff's cognitive

impairments prevented her from completing any tasks at all, as opined by Ms. Brown.  This

discussion satisfied the requirements of §§ 404.1520c and 416.920c as to the consistency of Ms. Brown's extreme cognitive limitations.

Finally, Plaintiff also objects to the ALJ's characterization of Ms. Brown's opinions as "vague" and "extreme." (Pl.'s Statement of Errors 16.) Yet the ALJ supported each of these characterizations with appropriate examples: Ms. Brown's opinions were vague because, "[f]or instance, she indicated the claimant had limited ability to remember, understand, or follow directions, but did not explain to what degree those limitations were." (R. 34.) *See Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008) (ALJ appropriate discounted medical source's opined limitations because they were "vague and not defined"). Similarly, Ms. Brown's opinions were extreme because, "[f]or instance, her indication that the claimant 'cannot sustain concentration complete tasks' would imply the claimant is completely incapable of performing any task at all. Such extreme limitations is not supported by the record . . . ." (*Id.*) In addition to meeting the commonsense definition of "extreme"—surely a complete inability to perform a cognitive function lies at the extreme end of the continuum of functioning—the ALJ's characterization is also consistent with the Social Security regulations defining "extreme" mental limitations: a claimant has an extreme limitation if "[she is] not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(e). If Plaintiff is not able to complete any task at all, it logically follows that Plaintiff cannot "function in this area independently, appropriately, effectively, and on a sustained basis." The undersigned finds no error in the ALJ's characterizations of Ms. Brown's opinions.

In sum, the Court concludes that the ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements of §§ 404.1520c and 416.920c and that

the ALJ's supportability and consistency analysis was supported by substantial evidence.

Although Plaintiff cites other record evidence that may have supported a more limited RFC,

"[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it,

even if there is substantial evidence in the record that would have supported an opposite

conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## V.    DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial

evidence supports the ALJ's decision denying benefits.  For the foregoing reasons, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM**

the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen

(14) days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s).   A Judge of this Court shall make a *de novo* determination of those

portions of the Report or specified proposed findings or recommendations to which objection is

made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit

this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to have the District Judge review the Report

and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

17